**Fill in this information to identify the case:**

Debtor 1  James Momoh Kemokai

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Eastern District of Pennsylvania

Case number  24-10277-amc

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:    Identify the Claim

**1. Who is the current creditor?**

MidFirst Bank

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☐ No
☑ Yes.  From whom?  First Horizon

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

MidFirst Bank
Name

999 N.W. Grand Blvd., Suite 100
Number      Street

Oklahoma City          OK          73118
City                  State        ZIP Code

Contact phone  717-234-4178

Contact email  lhaller@pkh.com

Where should payments to the creditor be sent? (if different)

Name

Number      Street

City                  State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

— — — — — — — — — — — — — — — — — — — — — — — —

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  __1__  __4__  __6__  __2__

**7. How much is the claim?**  $_____ 49,694.35

**Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned _____

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:  268 Hampden Road, Upper Darby, PA  19082 _____

**Basis for perfection:**  Mortgag, Note _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $_____

Amount of the claim that is secured:  $_____ 49,694.35

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $_____ 416.27

**Annual Interest Rate** (when case was filed) 3.875 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

                                                            **Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).       $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).       $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).       $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).       $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).       $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.       $_____

   \* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   03/01/2024
                   MM / DD / YYYY

     /s/ Leon P. Haller
            Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Leon P. Haller |
| | First name             Middle name             Last name |
| Title | Bankruptcy Attorney |
| Company | Purcell, Krug & Haller |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1719 North Front Street |
| | Number        Street |
| | Harrisburg                    PA       17102 |
| | City                     State       ZIP Code |
| Contact phone | 717-234-4178           Email lhaller@pkh.com |

---

## Part 1: Mortgage and Case Information

| Case Number: | 24-10277-13 |
|---|---|
| Debtor 1 | JAMES S MCMUSH |
| Debtor 2 | KGMOKM |
| Last 4 Digits to Identify | XXXX1421 |
| Creditor | MidFirst Bank |
| Servicer | MidFirst Bank |
| Fixed Interest/Adj | Fixed |
| Simple Interest/Actual/Other | |

## Part 2: Total Debt Calculation

| Principal Balance: | |
|---|---|
| Interest Due: | |
| Fees, Costs Due: | |
| Escrow Deficiency for Funds Advanced: | 0.00 |
| Less Total Funds On Hand: | 2,439.00 |
| Deferred Balance: | |
| Total Debt: | |

## Part 3: Arrearage as of Date of the Petition

| Principal Due: | 51,803.37 |
|---|---|
| Interest Due: | 329.96 |
| Prepetition Fees Due: | 0.00 |
| Escrow Deficiency for Funds Advanced: | 0.00 |
| Projected Escrow Shortage: | 2,439.00 |
| Less Funds On Hand: | 0.00 |
| Total Prepetition Arrearage: | 49,694.33 |

## Part 4: Monthly Mortgage Payment

| Principal & Interest: | 238.28 |
|---|---|
| Monthly Escrow: | 167.28 |
| Private Mortgage Insurance: | 0.00 |
| Total Monthly Payment: | 405.56 |
| Next Due Date: | 2/1/2024 |

## Part 5: Loan Payment History from Date of Default

| A Date | B Contractual Payment Amount | C Funds Received | D Amount Incurred | E Description | F Contractual Due Date | G Prin. Int & Esc Past Due Balance | H Amount to Principal | I Amount to Interest | J Amount to Escrow | K Amount to Fees or Charges | L Unapplied Funds | M Principal Balance | N Accrued Interest Balance | O Escrow Balance | P Fees/Charges Balance | Q Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2023 | 755.97 | | | Contractual Payment Due | 10/1/2023 | 755.97 | | | | | | 51,514.48 | 1026.71 | 1606.71 | 0.00 | 0.00 |
| 10/18/2023 | | 784.12 | | Funds Received | | 755.97 | | | | | | 51,514.48 | 1026.71 | 1606.71 | 0.00 | 0.00 |
| 10/18/2023 | | | 38.15 | Payments Posting | *10/01/2023 | 0.00 | 235.97 | 159.59 | 348.41 | | | 51,295.53 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 10/18/2023 | | | | Principal Curtailments | | | 5.88 | | | | | 51,295.53 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 11/1/2023 | 755.97 | | | Contractual Payment Due | 11/1/2023 | 755.97 | | | | | | 51,375.12 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 11/7/2023 | | 757.70 | | Funds Received | | 753.97 | | | | | | 51,375.12 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 12/1/2023 | 755.97 | | | Contractual Payment Due | 12/1/2023 | 1511.67 | | | | | | 51,277.63 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 12/11/2023 | | 900.00 | | Funds Received | | 1511.67 | | | | | | 51,277.63 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 12/11/2023 | | | | Payments Posting | | | 236.75 | 168.81 | 348.41 | | | 51,277.63 | 1375.12 | 1375.12 | 0.00 | 146.03 |
| 12/11/2023 | | | | Suspense Transaction | | 757.70 | | | | | | 51,048.88 | 1723.33 | 1723.33 | 0.00 | 0.00 |
| 1/1/2024 | | | | Contractual Payment Due | 1/1/2024 | 757.70 | | | | | | 51,048.88 | 1723.33 | 1723.33 | 0.00 | 0.00 |
| 1/1/2024 | | | | Suspense Transaction | | 1515.40 | | | | 146.03 | | 51,048.88 | 1723.33 | 1723.33 | 0.00 | 146.03 |
| 1/9/2024 | 757.70 | | | Contractual Payment Due | 1/1/2024 | 1515.40 | | | | | | 51,048.88 | 1723.33 | 1723.33 | 0.00 | 146.03 |
| 1/9/2024 | | 978.00 | | Funds Received | | 757.70 | | | | | | 51,048.88 | 1723.33 | 1723.33 | 0.00 | 146.03 |
| 1/9/2024 | | | | Payments Posting | *12/01/2023 | 757.70 | 237.51 | 168.05 | 352.14 | | 217.30 | 50,803.37 | 2075.67 | 2075.67 | 0.00 | 363.33 |
| 1/9/2024 | | | | Suspense Transaction | | | | | | | | 50,803.37 | 2075.67 | 2075.67 | 0.00 | 363.33 |

# ///  MIDLAND MORTGAGE

*A division of MidFirst Bank*

JAMES M KEMOKAI
268 HAMPDEN RD
UPPER DARBY          PA 19082-4007

YOUR LOAN NUMBER: ******1462
BANKRUPTCY CASE # 24-10277-13

DATE: 01/30/24

### *** ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE  BEGINNING   02/24 THROUGH    01/25.

------- ANTICIPATED PAYMENTS FROM ESCROW -    02/24 THROUGH    01/25 -------

| | |
|---|---:|
| HAZARD | 1035.00 |
| COUNTY TAX | 228.07 |
| CITY/TOWN TAX | 1025.88 |
| SCHOOL DISTRICT | 1910.51 |
| TOTAL PAYMENTS FROM ESCROW | 4199.46 |
| MONTHLY PAYMENT TO ESCROW | 349.95 (1/12TH OF ABOVE TOTAL) |

------- ANTICIPATED ESCROW ACTIVITY -    02/24 THROUGH    01/25--------

| MONTH | -ANTICIPATED PAYMENTS-<br>TO ESCROW | FROM ESCROW | DESCRIPTION | -- ESCROW BALANCE COMPARISON --<br>ANTICIPATED | | REQUIRED |
|---|---|---|---|---|---|---|
| | | ACTUAL | STARTING BALANCE | 0.00 | | 2449.71 |
| FEB 24 | 349.95 | 228.07 | COUNTY TAX | 121.88 | | 2571.59 |
| MAR 24 | 349.95 | 1035.00 | HAZARD | | | |
| | | 1025.88 | CITY/TOWN TAX | -1589.05 | | 860.66 |
| APR 24 | 349.95 | | | -1239.10 | | 1210.61 |
| MAY 24 | 349.95 | | | -889.15 | | 1560.56 |
| JUN 24 | 349.95 | | | -539.20 | | 1910.51 |
| JUL 24 | 349.95 | | | -189.25 | | 2260.46 |
| AUG 24 | 349.95 | 1910.51 | SCHOOL DISTR ALP | -1749.81 | RLP | 699.90 |
| SEP 24 | 349.95 | | | -1399.86 | | 1049.85 |
| OCT 24 | 349.95 | | | -1049.91 | | 1399.80 |
| NOV 24 | 349.95 | | | -699.96 | | 1749.75 |
| DEC 24 | 349.95 | | | -350.01 | | 2099.70 |
| JAN 25 | 349.95 | | | -.06 | | 2449.65 |

----------- DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS   -2449.71.

WILL BE COLLECTED FOR A PERIOD OF 00 MONTHS FROM FEBRUARY 01, 2024

IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS        0.00.

---

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK  73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK  73126-8959

# ///  MIDLAND MORTGAGE

*A division of MidFirst Bank*

\*ADJUSTED ESCROW SHORTAGE IS                                           0.00.
----------------- CALCULATION OF YOUR NEW PAYMENT AMOUNT ------------------

| | |
|---|---|
| PRINCIPAL & INTEREST | 405.56 |
| ESCROW (1/12TH OF ANNUAL ANTICIPATED | 349.95 |
| DISBURSEMENTS AS COMPUTED ABOVE) | |
| PLUS: OPTIONAL INSURANCE PREMIUMS | 0.00 |
| PLUS: REPLACEMENT RESERVE OR FHA SVC CHG | 0.00 |
| PLUS: SHORTAGE PAYMENT | 0.00 |
| MINUS: SURPLUS CREDIT | 0.00 |
| ROUNDING ADJUSTMENT | 0.00 |
| MINUS: BUYDOWN/ASSISTANCE PAYMENTS | 0.00 |

BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 02/01/24    755.51
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS    699.90.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE
IS TARGETED TO BE YOUR CUSHION AMOUNT.

YOUR ESCROW CUSHION FOR THIS CYCLE IS    699.90.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
01/24    352.14    00/00    0.00    00/00    0.00
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
00/00    0.00    00/00    0.00
00/00    0.00    00/00    0.00
00/00    0.00    00/00    0.00

**Midland Mortgage Customer Service**
P.O. Box 26648 · Oklahoma City, OK 73126-0648 · Tel 1-800-654-4566 · Fax 1-405-767-5500 · www.MyMidlandMortgage.com
**Qualified Written Requests, Notices of Error, Information Requests, and Credit Disputes must be sent to:**
P.O. Box 268959 · Oklahoma City, OK 73126-8959

# ⫻⫻⫻ Midland Mortgage

*A Division of MidFirst Bank*

YOUR LOAN NUMBER

** POC DISCLOSURE ESCROW ACCOUNT HISTORY **

| DATE | TRANSACTION TY | AMOUNT | ESC BAL |
|------|----------------|--------|---------|
| 2/7/2023 | ESCROW DEPOSIT | $348.41 | $3,135.71 |
| 2/10/2023 | PROPERTY TAX PAYMENT | ($228.07) | $2,907.64 |
| 3/6/2023 | PROPERTY TAX PAYMENT | ($1,025.88) | $1,881.76 |
| 3/7/2023 | PROPERTY INSURANCE PAYMENT | ($1,035.00) | $1,195.17 |
| 3/7/2023 | ESCROW DEPOSIT | $348.41 | $2,230.17 |
| 4/4/2023 | ESCROW DEPOSIT | $348.41 | $1,543.58 |
| 5/11/2023 | ESCROW DEPOSIT | $348.41 | $1,891.99 |
| 8/2/2023 | ESCROW DEPOSIT | $348.41 | $2,240.40 |
| 8/11/2023 | PROPERTY TAX PAYMENT | ($1,910.51) | $329.89 |
| 9/6/2023 | ESCROW DEPOSIT | $348.41 | $678.30 |
| 9/25/2023 | ESCROW DEPOSIT | $348.41 | $1,026.71 |
| 10/15/2023 | ESCROW DEPOSIT | $348.41 | $1,375.12 |
| 12/11/2023 | ESCROW DEPOSIT | $348.41 | $1,723.53 |
| 1/9/2024 | ESCROW DEPOSIT | $352.14 | $2,075.67 |

Midland Mortgage Customer Service
P.O. Box 26648, Oklahoma City, OK 73126-0648 Tel 1-800-654-4566 Fax 1-405-767-0311 www.mymidlandmortgage.com
Qualified Written Requests Notices of Error, Information Requests and Credit Disputes must be sent to
P.O. Box 26648, Oklahoma City, OK 73126-0648

# NOTE

**Multistate**
AP#         LN#

| FHA Case No. |
|---|
|  |

March 30, 2005
[Date]

268 Hampden Road,Upper Darby,PA 19082
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
Financial Mortgage Corp., a Pennsylvania Corporation

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
One Hundred Two Thousand Fifty Eight and no/100

Dollars (U.S. $ 102,058.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and One / Half percent (   6.5000     %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
May 1    , 2005   . Any principal and interest remaining on the first day of     April
2035  , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 7051 Camp Hill Rd., Fort Washington, PA 19034
or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 645.08     . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four                                  percent (   4.0000   ) % of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)                    _____ (Seal)
James M. Kemokai                  -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                                  -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                                  -Borrower                                                 -Borrower

_____ (Seal)                    _____ (Seal)
                                  -Borrower                                                 -Borrower

PAY TO THE ORDER OF
FIRST HORIZON HOME LOAN CORPORATION
WITHOUT RECOURSE

FINANCIAL MORTGAGE CORP.

By: _Charles J. Fitzgerald_

Charles J. Fitzgerald
Vice President

Without Recourse Pay to the Order of:

_____

From  MidFirst Bank

By: _____

Bette Garver, Vice President

Pay to the order of
**MIDFIRST BANK**
Without recourse
First Horizon Home Loans Corporation

by_ _Stacy Largent_

Stacy Largent, Vice President

RD BK03450-2267
2005029660    04/05/2005 10:23:30 AM:3
RCD FEE: $78.00

MG-MORTGAGE

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

Prepared By:
LuAn K. Horan

7051 Camp Hill Rd.
Fort Washington, PA 19034
(215) 836-9700
Return To:
Financial Mortgage Corp.

7051 Camp Hill Rd., Fort
Washington, PA 19034

AMERICAN LAND TRANSFER ASSOCIATES
816 W. SPRINGFIELD ROAD
SUITE 101
SPRINGFIELD, PA 19064

Parcel Number:
16-03-00789-00

——————————————— [Space Above This Line For Recording Data] ———————————————

Commonwealth of Pennsylvania

# MORTGAGE

| FHA Case No. |
| --- |
|  |

THIS MORTGAGE ("Security Instrument") is given on    March 30, 2005    .
The Mortgagor is  James M. Kemokai

("Borrower"). This Security Instrument is given to  Financial Mortgage Corp., a
Pennsylvania Corporation

which is organized and existing under the laws of the Commonwealth of Pennsylvania    , and
whose address is   7051 Camp Hill Rd., Fort Washington, PA 19034
("Lender"). Borrower owes Lender the principal sum of
One Hundred Two Thousand Fifty Eight and no/100
Dollars (U.S. $102,058.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
April 1, 2035    . This Security Instrument secures to Lender: (a) the repayment
of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the

FHA Pennsylvania Mortgage - 4/96
VMP-4R(PA) (0407)
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 9    MW 07/04    Initials: JMK

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Township of Upper Darby, County of Delaware, State of Pennsylvania, described according to a Plan made for Ralph Bodek, Damon and Foster, Civil Engineers, dated 11/20/1946, as follows, to wit:

BEGINNING at a point on the Northwesterly side of Hampden Road (40 feet wide) at a distance of 642.88 feet measured South 15 degrees 53 minutes 39 seconds West from the intersection of the said Northwesterly side of Hampden Road with the Southwesterly side of Walnut Street (60 feet wide).

CONTAINING in front or breadth South 15 degrees 53 minutes 39 seconds West along said side of Hampden Road 18 feet and extending of that width in length or depth passing partly through party walls on the Northeast and Southwest lines, North 74 degrees 6 minutes 21 seconds West 76.25 feet to the center line of a certain 10 feet wide driveway which extends Northeastwardly and Southwestwardly from Walnut Street to Locust Street and connects with a certain other 10 feet wide driveway which extends Southeastwardly into the said Hampden Road.

BEING Lot No. 10 on said Plan
BEING 268 Hampden Road
BEING Folio No. 16-03-00789-00

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways as and for driveways, passageways and watercourses at all times hereafter forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

_JMSC_

Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to the Lender the following described property located in Delaware

County, Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO.

BEING THE SAME PREMISES WHICH BY DEED DATED OF EVEN DATE HEREWITH AND INTENDED TO BE RECORDED IMMEDIATELY PRIOR HERETO, AMONG THE LAND RECORDS OF DELAWARE COUNTY, WAS GRANTED AND CONVEYED BY TUAN HOANG PHAN UNTO JAMES M. KEMOKAI, THE BORROWER HEREIN.

which has the address of 268 Hampden Road                                          [Street]
Upper Darby                                    [City], Pennsylvania  19082      [Zip Code]
("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

   1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the

Initials: JMK



annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Initials: 

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures

Initials: _JMK_



from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure

Initials: _JMIL_



proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16,

Initials: _JM K_

VMP®-4R(PA) (0407)                     Page 6 of 9

"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials: _J M K_

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider        ☐ Growing Equity Rider        ☐ Other [specify]
☐ Planned Unit Development Rider        ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                   James M. Kemokai          -Borrower

_____      _____ (Seal)
                                                               -Borrower

_____ (Seal)      _____ (Seal)
                         -Borrower                                              -Borrower

_____ (Seal)      _____ (Seal)
                         -Borrower                                              -Borrower

_____ (Seal)      _____ (Seal)
                         -Borrower                                              -Borrower

**COMMONWEALTH OF PENNSYLVANIA,** Delaware           **County ss:**

On this,   30th   day of      March 2005       , before me, the undersigned officer, personally appeared   James M. Kemokai

                             known to me (or satisfactorily proven) to be the person(s) whose name is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

> NOTARIAL SEAL
> KATHLEEN J. PIVNICKAS, Notary Public
> Radnor Twp., Delaware County
> My Commission Expires May 23, 2005

Title of Officer

**Certificate of Residence**

      I, LuAn K. Horan               , do hereby certify that the correct address of the within-named Lender is 7051 Camp Hill Rd., Fort Washington, PA 19034

      Witness my hand this    30th    day of    March 2005

LuAn K. Horan              Agent of Lender

Initials: _____

AMERICAN LAND TRANSFER ASSOCIATES
816 W. SPRINGFIELD ROAD
SUITE 101
SPRINGFIELD, PA 19064

RD BK03450-2277
2005029661   04/05/2005 10 23:30 AM:4
RCD FEE: $36.00

AS-ASSIGNMENTS

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

**KNOW ALL MEN BY THESE PRESENTS** that FINANCIAL MORTGAGE CORP., a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal office at 7051 Camp Hill Rd., Fort Washington, PA 19034, for and in consideration of the sum of One Dollar, lawful money of the United States of America, and other good and valuable consideration, to it in hand paid by **First Horizon Home Loan Corp.**
a corporation organized and existing under the laws of   **Kansas**
with its principal office at   **4000 Horizon Way, Irving, TX 75063**

hereinafter referred to as ASSIGNEE, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred and set over, and by these presents does grant, bargain, sell, assign, transfer and set over unto the said ASSIGNEE and its successors and assigns; all that certain Indenture of Mortgage covering premises situate in the **Township**   of   **Upper Darby**   , County of   **Delaware**
and State of   **Pennsylvania**
BEING known as: **268 Hampden Road, Upper Darby, PA 19082**
dated   **03/30/2005**   , and to be recorded immediately prior to the recording of this Assignment in the Office of the Register, Clerk or Recorder of   **Delaware**   County, made and executed by
**James M. Kemokal**

hereinafter
referred to as MORTGAGOR, to said FINANCIAL MORTGAGE CORP., in the principal sum of
$   **102,058.00**   , payable with interest on the unpaid balance at the rate of   **6.500**   %
per annum, in monthly installments as therein noted.

TOGETHER with the hereditaments and premises in and by said Indenture of Mortgage particularly described and granted, or mentioned and intended so to be, with the apprutenances, and the bond or obligation in said Indenture of Mortgage mentioned and thereby intended to be secured and all incidental or supplemental documents, or instruments, if any secured or intended to be secured thereby, and all monies due and to grow due thereon, and all its estate, right, title, interest, property, claim and demand in and to the same.

TO HAVE and to hold the same unto the said ASSIGNEE and its successors and assigns, to its and their proper use, benefit and behoof forever, subject, nevertheless, to the equity of redemption of said MORTGAGOR in said Indenture of Mortgage named, and the heirs, executors, administrators, successors and assigns of said MORTGAGOR therein.

AND IT, the said FINANCIAL MORTGAGE CORP., does hereby covenant, promise and agree to and with the said ASSIGNEE that there is now due and owing upon the said bond or obligation and Mortgage, the sum of money hereinabove specified as the principal sum due thereon, with interest at the rate specified hereinabove.

IN WITNESS WHEREOF, the said FINANCIAL MORTGAGE CORP. has caused its corporate seal to be hereto affixed and these presents to be duly executed by its proper officers this   **30th**
day of   **March**   A.D.,   **2005**   .

BY: _____
Daniel A. Fitzgerald, President

ATTEST: _____
Charles J. Fitzgerald, Vice President

Page 1 of 2

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Township of Upper Darby, County of Delaware, State of Pennsylvania, described according to a Plan made for Ralph Bodek, Damon and Foster, Civil Engineers, dated 11/20/1946, as follows, to wit:

BEGINNING at a point on the Northwesterly side of Hampden Road (40 feet wide) at a distance of 642.88 feet measured South 15 degrees 53 minutes 39 seconds West from the intersection of the said Northwesterly side of Hampden Road with the Southwesterly side of Walnut Street (60 feet wide).

CONTAINING in front or breadth South 15 degrees 53 minutes 39 seconds West along said side of Hampden Road 18 feet and extending of that width in length or depth passing partly through party walls on the Northeast and Southwest lines, North 74 degrees 6 minutes 21 seconds West 76.25 feet to the center line of a certain 10 feet wide driveway which extends Northeastwardly and Southwestwardly from Walnut Street to Locust Street and connects with a certain other 10 feet wide driveway which extends Southeastwardly into the said Hampden Road.

BEING Lot No. 10 on said Plan
BEING 268 Hampden Road
BEING Folio No. 16-03-00789-00

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways as and for driveways, passageways and watercourses at all times hereafter forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

COMMONWEALTH OF PENNSYLVANIA  )
                                                      )   SS:
COUNTY OF   **Delaware**              )

BE IT REMEMBERED, that on this **30th**      day of     **March**                  , in the Year
of Our Lord   **2005**                                            , before me, the subscriber, a Notary
Public of the Commonwealth of Pennsylvania, personally appeared Daniel A. Fitzgerald,
President of FINANCIAL MORTGAGE CORP., known to me personally to be such, and
acknowledged this Instrument of Writing, to be his act and deed and the act and deed of said
corporation; that the signature of the Officer aforesaid is in his own proper handwriting; that the
seal above pre-printed is the common or corporate seal of said corporation and that his act of
signing, sealing, executing, acknowledging and delivering said Instrument of Writing was duly
authorized by a resolution of the Board of Directors of the said FINANCIAL MORTGAGE CORP.


_____
Notary Public of Pennsylvania


Prepared by:     **LuAn K. Horan**


COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Anne Boselli, Notary Public
Whitemarsh Twp., Montgomery County
My Commission Expires Nov. 4, 2008
Member, Pennsylvania Association of Notaries


Page 2 of 2



Prepared by: J. Lesinski/NTC,2100 Alt.
19 North, Palm Harbor, FL 34683
(800)346-9152

Return To:
   FIRST HORIZON HOME LOANS
   C/O NTC 2100 Alt. 19 North
   Palm Harbor, FL 34683
MidFirst L#:
Investor/Pool: GNMA
UPI#: 16-03-00789-00
First Horizon L#:



RD BK04413-0631          AS-ASSIGNMENTS
2008058319   06/07/2008 11:45:38 AM:10
RCD FEE: $51.00

DELAWARE COUNTY
THOMAS J. JUDGE SR, ROD

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORP., WHOSE ADDRESS IS 1555 W. WALNUT HILL LN , IRVING, TX 75038,** (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MIDFIRST BANK, WHOSE ADDRESS IS 999 N.W. GRAND BOULEVARD SUITE 100, OKLAHOMA CITY, OK 73118, ITS SUCCESSORS OR ASSIGNS,** (ASSIGNEE). said mortgage dated 03/30/2005 , in the amount of $102,058.00 made by **JAMES M. KEMOKAI** to **FINANCIAL MORTGAGE CORP.** recorded on 04/05/2005 , in the Office of the Recorder of Deeds of DELAWARE County, Pennsylvania, in Book 03450 , Page 2267 (or Document No. 2005029660 )
   See Exhibit attached for Assignments, Modifications etc
Mortgage Premise: 268 HAMPDEN ROAD|TWP. OF UPPER DARBY
         UPPER DARBY, PA 19082

In Witness whereof, the said Corporation has caused this instrument to be executed in its corporate name by CHRIS JONES its LIMITED VICE PRESIDENT and authorized signer. THIS 04TH DAY OF JUNE IN THE YEAR 2008  FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORP.

BY: _____
   CHRIS JONES  LIMITED VICE PRESIDENT

FHHMF          2008-05BULK CJ1839718 N1

form5/FRMPAD1

Loan Number

STATE OF FLORIDA    COUNTY OF Pinellas
On 06/04/2008 , before me, BRYAN J. BLY  the Undersigned, Notary Public, personally appeared CHRIS JONES
who acknowledged to be the LIMITED VICE PRESIDENT  of FIRST HORIZON HOME LOANS, A DIVISION
OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER
TO FIRST HORIZON HOME LOAN CORP.  a corporation, and that s/he as such, being authorized so to do,
executed the foregoing instrument for the purposes therein contained, by signing the name of the corporation by
themselves as such corporate officers.  IN WITNESS WHEREOF, I hereunto set my hand and official seal.

BRYAN J. BLY  Notary Public
My commission expires: 07/01/2011

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

Assignment of Mortgage from:
FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL
ASSOCIATION, AS SUCCESSOR IN INTEREST BY MERGER TO FIRST HORIZON HOME LOAN CORP.,
WHOSE ADDRESS IS 1555 W. WALNUT HILL LN , IRVING, TX 75038, (ASSIGNOR).
to:
MIDFIRST BANK, WHOSE ADDRESS IS 999 N.W. GRAND BOULEVARD SUITE 100, OKLAHOMA
CITY, OK 73118, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Mortgagor: JAMES M. KEMOKAI

When Recorded Return To:
FIRST HORIZON HOME LOANS
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 268 HAMPDEN ROAD|TWP. OF UPPER DARBY
        UPPER DARBY, PA 19082
DELAWARE
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said mortgage.

FHHMF        2008-05BULK CJ1839718 N1

Loan No

### 'EXHIBIT A'

Assignments, Modifications, Consolidations Exhibit

ASSN: FINANCIAL MORTGAGE CORP. TO FIRST HORIZON HOME LOAN
CORP., DATED 03/30/2005, REC. DATE 04/05/2005, BK/PG
03450/2277, INST. 2005029661

RD BK05331-1242
2013034199    05/23/2013 12:09:03 PM:1
RCD FEE: $55.00

AG-AGREEMENTS

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

**When recorded mail to: #:**
First American Title
Loss Mitigation Title Services 1348.10      S
P.O. Box 27670
Santa Ana, CA  92799
RE: KEMOKAI - PROPERTY REPORT

Document Prepared by:
Patricia Edwards
MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

Please cross-reference to:  Book 3450 on Page 2267, DELAWARE  County Pennsylvania.

## LOAN MODIFICATION AGREEMENT
### FIXED RATE LOAN

This Loan Modification Agreement ("Agreement"), made this February 19, 2013, between
**JAMES M KEMOKAI & MARGARET N EUASTER AKA MARGARET N KEMOKAI**
("Borrower") and MidFirst Bank, a federally chartered savings association located at 501 N.W.
Grand Blvd. Oklahoma City, OK 73118 ("Lender"), renews, amends, supplements and extends:
(1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") recorded
4/5/2005, in  Book 3450 on Page 2267, in DELAWARE  County, Pennsylvania ,  and (2) the
Promissory Note (the "Note"), in the original principal amount of $102,058.00 bearing the same
date and secured by, the Security Instrument and other loan documents typically referred to as
"addenda" or "riders" (collectively referred to herein as the "Loan Documents"), which covers the
real and personal property described in the Security Instrument, located at 268 HAMPDEN
ROAD, UPPER DARBY, PA  19082, the real property described being set forth as follows:

See Exhibit "A" attached hereto and made a part hereof.

Parcel # 16030078900

Borrower Initial Lines



Page 1 of the Loan Modification Agreement         *Please add the appropriate number of initial lines for each
Order Number: 7803287                              signatory over 4

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the Township of Upper Darby, County of Delaware, State of Pennsylvania, described according to a Plan made for Ralph Bodek, Damon and Foster, Civil Engineers, dated 11/20/1946, as follows, to wit:

BEGINNING at a point on the Northwesterly side of Hampden Road (40 feet wide) at a distance of 642.88 feet measured South 15 degrees 53 minutes 39 seconds West from the intersection of the said Northwesterly side of Hampden Road with the Southwesterly side of Walnut Street (60 feet wide).

CONTAINING in front or breadth South 15 degrees 53 minutes 39 seconds West along said side of Hampden Road 18 feet and extending of that width in length or depth passing partly through party walls on the Northeast and Southwest lines, North 74 degrees 6 minutes 21 seconds West 76.25 feet to the center line of a certain 10 feet wide driveway which extends Northeastwardly and Southwestwardly from Walnut Street to Locust Street and connects with a certain other 10 feet wide driveway which extends Southeastwardly into the said Hampden Road.

BEING Lot No. 10 on said Plan
BEING 268 Hampden Road
BEING Folio No. 16-03-00789-00

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways as and for driveways, passageways and watercourses at all times hereafter forever, in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

_JMSL_

(Herein defined as "Property").

**Capitalized Amount: $0.00**
Being the same property conveyed to **JAMES M KEMOKAI & MARGARET N EUASTER AKA MARGARET N KEMOKAI** by Deed of Trust recorded 3/23/2006 and recorded in Book 3757 on Page 951 in DELAWARE County Pennsylvania

Borrower is in default or at imminent risk of default under the Loan Documents and desires the Lender forbear from the exercise of its rights under the Loan Documents, to extend or rearrange the time and manner of repayment or payment of the Note and other obligations due to Lender under the Loan Documents and to extend and carry forward the lien(s) on the Property, whether created by the Security Instrument or otherwise. Lender, the legal holder and owner of the Note and of the lien(s) securing the same has agreed to the request of the Borrower to so forbear, to extend or rearrange the time and manner of payment of the Note and to grant certain other financial accommodations pursuant to the terms of this Agreement.

In consideration of the mutual promises and agreements exchanged, and other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to modify, renew and extend the Note and Security Instrument and any other Loan Documents, as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument)

1. **Acknowledgement of Unpaid Principal Balance and Expenses:**

   Borrower acknowledges that as of 02/04/2013 the Borrower owes the Lender the unpaid principal balance of **$87,121.98**, in addition to the other fees, charges and expenses described in paragraph 2 hereof. Borrower acknowledges that **$0.00** of the Unpaid Principal Balance shall be deferred (the "Deferred Principal Balance") and repaid to HUD according to the terms of the HUD Partial Claim which is memorialized in a Promissory Note and Subordinate Mortgage/Deed of Trust between Borrower and the Department of Housing and Urban Development ("HUD")("HUD Partial Claim Documents"). Borrower shall not be required to make monthly payments on the Deferred Principal Balance but rather shall repay that amount to HUD according to the terms of the HUD Partial Claim Documents.

   After application of the Deferred Principal Balance, the amount owed by Borrower under the terms of this Modification Agreement is **$86,246.70**, ("Modified Principal Balance"). Borrower hereby renews, extends and promises to pay the Modified Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Modified Principal Balance until the full amount of the Modified Principal Balance and the other amounts due hereunder and under the Loan Documents have been paid in accordance with the terms and conditions of the Loan Documents, as modified hereby. All references in the Loan Documents to "Principal" shall be deemed to refer to the Modified Principal Balance.

2. **Acknowledgement of Unpaid Fees and Costs:**

Borrower Initial Lines
JMK  JMK
MN  EK

Page 2 of the Loan Modification Agreement
Order Number: 7803287

*Please add the appropriate number of initial lines for each signatory over 4

The Borrower has agreed to pay all outstanding late charges, recording fees, title examination, attorney's fees and other costs, fees and expenses the Lender incurred as a result of this modification, as well as all other costs, fees and expenses now due and owing on the Loan plus such other charges; costs, fees and expenses incurred hereafter (the "Fees and Costs").

The Lender has agreed to postpone the collection of the outstanding Fees and Costs that are not paid in advance and that are not included in the Modified Principal Balance as set forth in paragraph 1, all of which remain due and payable to the Lender and shall be paid by the Borrower, with interest as permitted by the Loan Documents. Said Fees and Costs shall be payable to the Lender on demand of Lender and shall be secured by the Security Instrument to the extent so provided in the Security Instrument and otherwise permissible under applicable laws and requirements.

3. **Interest Calculation**:

   Interest will be calculated at a fixed yearly interest rate of **3.875%**.

4. **Payment Amounts, Time of Payments And Maturity Date:**

   a. Borrower acknowledges and agrees that Borrower shall, beginning on **3/1/2013**, through the Maturity Date, make monthly payments of U.S. **$405.56** for principal and interest and shall continue to make such payments in accordance with the terms and conditions set forth in the Loan Documents until the Modified Principal Balance is paid in full.

   b. An Escrow account has been established under the terms and conditions of the Note and other Loan Documents. Borrower will make an Escrow payment each month on each payment due date. The Escrow payment currently is **$316.47** per month, which is subject to change depending on the amounts attributable to taxes, insurance and other escrow items as provided herein. **The present combined Monthly Payment and Escrow Payment will be $722.03.** The Escrow payment will be re-analyzed from time to time in accordance with the terms of the Note and other Loan Documents to determine if there is any change in the amount due to changes in amounts due for taxes, insurance and other escrow items and said Escrow payment will be combined with the monthly payment established in Paragraph 4 herein.

   c. The Maturity Date of the Loan is extended to **2/1/2043**. If on the new Maturity Date, Borrower still owes amounts to the Lender, Borrower will pay these amounts in full on the Maturity Date.

5. **Place of Payment**:

   Borrower agrees to make payments at the following address or such other place as the Lender may require:

   Midland Mortgage - A Division of MidFirst Bank
   Attn: Cashiers
   P.O. 268888

Borrower Initial Lines

JMK  JMK
MN  EK

*Please add the appropriate number of initial lines for each signatory over 4

Oklahoma City, OK 73126-8888

6. **Adjustable Rate Loan Provisions:**

If the interest rate is calculated as provided in the Note, any rate and payment adjustment provisions in the Note will apply. If the interest rate is fixed, any rate and payment adjustment provisions of the Note will not apply.

7. **Sale or Transfer of Property by Borrower:**

   a. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred if the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument without further notice or demand on the Borrower.

   b. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

8. **Compliance with Loan Documents:**

Borrower represents that, except for the payments described in paragraphs 1 and 2 above, Borrower is in full compliance with the covenants in the Loan Documents and that all of the representations and warranties contained in the Loan Documents are true, correct or satisfied as of the date hereof.

9. **Renewal and Extension:**

It is the intention of the parties that all liens and security interests described in the Loan Documents are hereby renewed and extended until the Modified Principal Balance and other obligations to Lender, have been fully paid. The Borrower and Lender acknowledge and agree that the extension, amendment, modification or rearrangement effected by this Agreement shall in no manner affect or impair the Note or the liens and security interests securing same, the purposes of this Agreement being simply to extend, modify, amend or rearrange the time and manner of payment of the Loan Documents and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Loan Documents (including, if applicable, any and all vendor's liens securing the Loan Documents), which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect to fully secure the payment of the Note. Borrower hereby expressly waives the benefit of any and all statutes of limitations which might otherwise inure to Borrower's benefit, or be in any way applicable to Borrower's obligations under the terms of any and all instruments described herein. Borrower further expressly waives any right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

10. **No Waiver of Lender's Rights Regarding Default:**

Borrower Initial Lines

*Please add the appropriate number of initial lines for each signatory over 4

All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder. This Agreement shall in no way be deemed to be a waiver of Lender's rights and remedies by reason of any default by Borrower under the Loan Documents as herein modified, including without limitation future payment defaults, and nothing contained herein shall be deemed to be a waiver by Lender of any terms or conditions of the Loan Documents as modified herein. Nothing herein shall constitute an agreement by Lender to any future modification of the Loan Documents and Lender expressly reserves the right to refuse to agree to any future modifications.

### 11. Release and Waiver of Other Claims:

As an express inducement to Lender's agreement to this Agreement, Borrower, jointly and severally, hereby unconditionally releases Lender, its legal representatives, affiliates, subsidiaries, parent companies, agents, officers, employees, attorneys, successors and assigns (collectively the "Released Parties") from any and all claims, demands, actions, damages and causes of actions which Borrower has asserted or claimed or might now or hereafter assert or claim against all or any of the Released Parties, whether known or unknown, arising out of, related to or in any way connected with or based upon any Prior Related Event (as such term is hereinafter defined). As used herein, the term "Prior Related Event" shall mean any act, omission, circumstance, agreement, loan, extension of credit, transaction, transfer, payment, event, action or occurrence between or involving Borrower or Borrower's property and all or any of the Released Parties and which was made or extended or which occurred at any time or times prior to the execution of this Agreement, including without limiting in any respect the generality of the foregoing: (i) any action taken to obtain payment of any indebtedness or to otherwise enforce or exercise any right or purported right of Lender as a creditor of Borrower; and (ii) any payment or other transfer made to Lender by or for the account of Borrower. Borrower agrees and acknowledges that this release is not to be construed as or deemed an acknowledgement or admission on the part of any of the Released Parties of liability for any matter or as precedent upon which liability may be asserted.

### 12. Bankruptcy:

If, since inception of this loan through date of this Agreement, the Borrower has received a discharge in a Chapter 7 bankruptcy and there has been no valid reaffirmation of the underlying debt, the Lender is not attempting to re-establish any personal liability for the underlying debt by entering into this Agreement. However, the parties acknowledge that the Lender retains certain rights, including but not limited to the right to foreclose its interest in the property under appropriate circumstances. The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its right and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations thereunder.

### 13. Loan Documents Remain In Full Force and Effect:

Borrower Initial Lines
*Please add the appropriate number of initial lines for each signatory over 4

As amended herein, the provisions of the Loan Documents shall continue in full force and effect, and Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder subject to the Bankruptcy exception in Paragraph 12 above. In the event of any inconsistency between this Agreement and the terms of the Loan Documents, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a novation, satisfaction or release, in whole or in part, of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by and comply with all of the terms and provisions thereof, except as amended by this Agreement.

### 14. Execution of Additional Documentation:

Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

### 15. Miscellaneous:

a. Lender does not, by execution of this Agreement, waive any rights it may have against any person not a party to the Agreement.

b. If any provision in this Agreement shall to any extent be determined by a court of law to be invalid, the remainder of the Agreement shall not be affected thereby, and shall continue in full force and effect to bind the parties.

c. This Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same agreement.

d. This Agreement shall be governed by the laws of the State where the Property is located.

### 16. Effective Date:

This Agreement shall be effective upon the execution of this Agreement by Lender and Borrower

**IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS LOAN MODIFICATION AGREEMENT, TOGETHER WITH THE LOAN DOCUMENTS AND ANY EXHIBITS AND SCHEDULES THERETO, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND CONTROL OVER ALL PRIOR NEGOTIATIONS, AGREEMENTS AND UNDERTAKINGS BETWEEN THE PARTIES WITH RESPECT TO SUCH MATTER. ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN AGREEMENT MAY BE LEGALLY ENFORCED. THIS LOAN MODIFICATION AGREEMENT MAY BE AMENDED OR CHANGED ONLY BY AN INSTRUMENT IN WRITING EXECUTED BY THE PARTIES OR THEIR PERMITTED ASSIGNEES.**

Borrower Initial Lines

Page 6 of the Loan Modification Agreement
Order Number: 7803287

*Please add the appropriate number of initial lines for each signatory over 4

BORROWER

_____                    03-02-13
JAMES M KEMOKAI                            _____
                                           Date

_Margreat N. Ekemeoi_                      03-02-13
MARGARET N EUASTER AKA MARGARET N KEMOKAI  _____
                                           Date

                        Acknowledgement

STATE OF Pennsylvania                    )
                                         ) SS:
COUNTY OF **DELAWARE**                   )

    On the __2__ day of __March__, 20__13__ before me, the undersigned, a notary public in and for said state, personally appeared **JAMES M KEMOKAI & MARGARET N EUASTER AKA MARGARET N KEMOKAI**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

    In witness whereof, I hereunto set my hand and official seal.


_____
Notary Public

_Vincent A. Riccione_                    County of Residence: _Chester_
Printed name of notary                   Commission Number: _1137105_
                                         My Commission Expires: _06-20-2013_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
VINCENT A. RICCIONE, Notary Public
Upper Darby Twp., Delaware County
My Commission Expires June 20, 2013


Page 7 of the Loan Modification Agreement
Order Number: 7803287

LENDER

**MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118**

_____

Vice President, **MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118**

**Chris Weeks**
_____
Printed Name


Acknowledgement

STATE OF OKLAHOMA        )
                         ) SS:
COUNTY OF OKLAHOMA       )

On the 8 day of 3 , 20 13 , before me, the undersigned, a notary public in and for said state, personally appeared **Chris Weeks** , who acknowledged himself/herself/themselves to be a Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118 , and who is personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity as Vice President of MidFirst Bank, a federally chartered savings association located at 501 N.W. Grand Blvd. Oklahoma City, OK 73118 , and that by his/her/their signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.


_____
Notary Public

Charlotte A Caughron
_____
Printed Name of Notary

CHARLOTTE A. CAUGHRON
NOTARY
# 08003957
EXP. 05/07/13
PUBLIC
STATE OF OKLAHOMA

County of Residence: **Canadian** _____

My Commission Expires: _____


Page 8 of the Loan Modification Agreement
Order Number: 7803287



# Midland Mortgage *A Division of MidFirst Bank*

P.O. Box 268806 • Oklahoma City, OK 73126
Tel: 800.552.3000 • Fax: 405.767.5815 • MyMidlandMortgage.com

## CERTIFICATE OF RESIDENCE

**MORTGAGE MODIFICATION AGREEMENT**
TITLE OF DOCUMENT

BETWEEN:

**JAMES M KEMOKAI & MARGARET N EUASTER AKA MARGARET N KEMOKAI**
*(ASSIGNOR/MORTGAGOR/GRANTOR)*

**AND**

**MIDFIRST BANK**
*(ASSIGNEE/MORTGAGEE/GRANTEE)*

*The precise address of the within ASSIGNOR/MORTGAGOR/GRANTOR is:*

**268 HAMPDEN ROAD  UPPER DARBY, PA  19082**

BORROWER

_____        03-02-13
JAMES M KEMOKAI                                    Date

Margreat N. E. Kemokai        03-02-13
MARGARET N EUASTER AKA MARGARET N KEMOKAI        Date

Loan ID: 1462